**SOUTHWEST KEY PROGRAM, INC.** d/b/a Texas Key Program, Inc. and La Esperanza Home for Boys, Petitioners,

v.

Carlos GIL–PEREZ, Respondent.

No. 00–1324.

Supreme Court of Texas.

Argued Jan. 16, 2002.

Decided July 3, 2002.

Rehearing Denied Aug. 22, 2002.

William S. Helfand, Kevin D. Jewell, Magenheim Bateman & Helfand, P.L.L.C., Houston, for Petitioner.

Timothy H. Pletcher, Kimberly Ann Warren Brown, Helm Pletcher Bowen & Saunders, Houston, for Respondent.

Justice RODRIGUEZ delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice BAKER and Justice JEFFERSON join.

Carlos Gil–Perez sued Southwest Key Program, Inc., d/b/a Texas Key Program, Inc., and La Esperanza Home for Boys (collectively "Southwest Key") for damages arising from a knee injury he sustained during an impromptu game of

tackle football. The trial court rendered judgment on the verdict against Southwest Key, and the court of appeals affirmed. 79 S.W.3d 571. Gil–Perez generally alleged a negligence claim based on several theories, including negligent supervision, negligent instruction and organization of the game, and failure to provide protective equipment. However, we conclude that Southwest Key's failure to provide protective equipment for use during the football game is the only alleged causal nexus underlying each of Gil–Perez's theories of negligence. Because the evidence was legally insufficient to support the jury's finding that Southwest Key's negligence proximately caused Gil–Perez's injury, we reverse the court of appeals' judgment and render judgment that Gil–Perez take nothing.

## I. Facts

Southwest Key owns and operates La Esperanza Home for Boys in Brownsville, Texas. Southwest Key accepted placement of Gil–Perez in the home through an agreement with the Texas Youth Commission. In September 1994, Antonio Gracia, a Southwest Key employee, took Gil–Perez and some other residents to a local stadium to participate in various athletic activities. Gracia supervised as some of the boys jogged on the track, while others played tag. At one point, several nonresident boys, who had been playing soccer on an adjacent field, approached Gracia and the boys and proposed that they all play a game of football. Gracia allowed his boys to play on the condition that tackling would take place only below the waist. Gil–Perez participated in the football game, which continued for a few hours. On the last play, he was tackled and suffered a dislocated knee.

Gil–Perez sued Southwest Key, alleging that it was negligent in allowing him to play tackle football without providing any protective gear or equipment. In the trial court, Southwest Key claimed that this case involved a "sports injury" and urged the court to adopt a heightened standard for recovery, requiring reckless or intentional conduct. The trial court rejected Southwest Key's argument and submitted the case to the jury as one involving ordinary negligence. The jury found Southwest Key one-hundred percent negligent and awarded Gil–Perez $75,000 in damages, plus interest and costs, and the trial court rendered judgment on the verdict.

On appeal, Southwest Key argued that the trial court erred in submitting an ordinary negligence question to the jury, again arguing that this is a sports-injury case in which Gil–Perez must prove that Southwest Key acted with reckless or intentional disregard for his safety in order to recover. Alternatively, Southwest Key argued that the jury's verdict was not supported by legally or factually sufficient evidence that its breach proximately caused Gil–Perez's injury. Specifically, Southwest Key asserted that Gil–Perez's sole liability theory was based on Southwest Key's failure to provide protective equipment during the game, but there was no evidence that this failure proximately caused Gil–Perez's injury. Gil–Perez countered that he raised other theories of liability, including negligent supervision and negligent instruction and organization of the game.

The court of appeals determined that because neither Southwest Key nor its employee (Gracia) participated in or sponsored the football game, it was not a sports-injury case, and ordinary negligence was the appropriate standard. 79 S.W.3d at 576. Further, the court of appeals agreed that Gil–Perez had asserted multiple negligence theories against Southwest Key. *Id.* at 580. After concluding that there was sufficient evidence to support

the jury's finding on negligent supervision, the court of appeals affirmed the trial court's judgment. *Id.* at 580. Southwest Key petitioned this Court for review, contending that: (1) the court of appeals erred in determining that this is not a sports-injury case, and thus that a higher standard of liability should be applied; and (2) even under an ordinary negligence framework, there is no evidence to support the jury's finding that Southwest Key's negligence proximately caused Gil–Perez's injury.

## II. Analysis

Southwest Key argues that we should apply a heightened standard of tort liability and urges us to adopt a uniform rule applicable in all cases in which a participant in a sporting or recreational event suffers an injury during play. Southwest Key primarily advocates an "inherent risk" standard, and alternatively suggests a "reckless or intentional" standard. Gil–Perez contends that this is not a sports-injury case, but rather a case of negligent supervision, and thus, ordinary negligence principles should apply. In response, Southwest Key argues that, even under the ordinary negligence standard urged by Gil–Perez, there is no evidence that its negligence proximately caused Gil–Perez's injury.

### A. Liability Standards

Although this Court has not spoken on the issue of liability in the context of sports injuries, the lower courts of this state and the high courts of many other states have. Three models of liability have emerged. A majority of courts have adopted a "reckless or intentional" standard in a variety of sports-related situations, requiring an injured plaintiff to prove that the participant-defendant's conduct was either reckless or intentionally injurious.[1] And some courts have extended this standard to situations in which the defendant is a nonparticipant in the sporting event, as the court of appeals determined Southwest Key to be here. *See Morgan v. State,* 90 N.Y.2d 471, 662 N.Y.S.2d 421, 685 N.E.2d 202, 207–08 (1997) (holding that, in assessing whether an owner or operator of an athletic facility has violated a duty of care toward voluntary participants injured on the premises, the applicable standard should include whether the conditions caused by the defendant's negligence were unique and created a dangerous condition over and above the usual dangers inherent in the sport); *Kline v. OID Assocs.,* 80 Ohio App.3d 393, 609 N.E.2d 564, 565 (1992) (applying the reckless or intentional standard when an injured indoor soccer game participant sued the owner of the facility in which the game was played as well as the organizer of the soccer league). However, a few states adhere to the traditional negligence standard, under which a defendant owes a duty of ordinary care. *See Estes v. Trip-*

1. *Allen v. Donath,* 875 S.W.2d 438, 440 (Tex. App.-Waco 1994, writ denied) (golf); *Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614, 617 (Tex.App.-Amarillo 1993, no writ) (golf); *Connell v. Payne,* 814 S.W.2d 486, 489 (Tex.App.-Dallas 1991, writ denied) (polo); *see also Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 711 (1992) (touch football); *Jaworski v. Kiernan,* 241 Conn. 399, 696 A.2d 332, 339 (1997) (soccer); *Hoke v. Cullinan,* 914 S.W.2d 335, 339 (Ky. 1995) (tennis); *Gauvin v. Clark,* 404 Mass. 450, 537 N.E.2d 94, 95 (1989) (hockey); *Ritchie Gamester,* 461 Mich. 73, 597 N.W.2d 517, 525 (1999) (ice skating); *Ross v. Clouser,* 637 S.W.2d 11, 13–14 (Mo.1982) (softball); *Dotzler v. Tuttle,* 234 Neb. 176, 449 N.W.2d 774, 777 (1990) (pickup basketball); *Crawn v. Campo,* 136 N.J. 494, 643 A.2d 600, 601 (1994) (softball); *Turcotte v. Fell,* 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964, 968 (1986) (horse racing); *Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699, 703–04 (1990) (kick the can).

*son,* 188 Ariz. 93, 932 P.2d 1364, 1366 (App.1997); *Auckenthaler v. Grundmeyer,* 110 Nev. 682, 877 P.2d 1039, 1043–44 (1994); *Lestina v. W. Bend Mut. Ins. Co.,* 176 Wis.2d 901, 501 N.W.2d 28, 32–33 (1993). Finally, there is the "inherent risk" standard, previously advocated by some MEMBERS of this Court, which states that both co-participant and nonparticipant defendants owe no duty to protect a participant from risks inherent in the sport or activity in which he has chosen to take part. *Phi Delta Theta Co. v. Moore,* 10 S.W.3d 658, 663 (Tex.1999) (Enoch, J., dissenting to improvident grant); *see also West v. Sundown Little League of Stockton, Inc.,* 96 Cal.App.4th 351, 116 Cal. Rptr.2d 849, 854–55 (2002) (applying the inherent risk standard in a suit by an injured little league player against local and national little league organization and coaches); *Davis v. Greer,* 940 S.W.2d 582, 582–83 (Tex.1996) (Gonzales, J., opinion on denial of application for writ of error) (arguing that the inherent risk standard is preferable to the reckless or intentional standard); *Scott v. Pac. W. Mountain Resort,* 119 Wash.2d 484, 834 P.2d 6, 13–14 (1992) ("A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport.").

We acknowledge the valid public policy reasons that have been articulated in support of each of the three approaches to liability in sports-injury cases. *See Ritchie-Gamester v. City of Berkley,* 461 Mich. 73, 597 N.W.2d 517, 522–24 (1999); *Auckenthaler,* 877 P.2d at 1043–44; *Phi Delta Theta,* 10 S.W.3d at 660–62. However, because Gil–Perez's claim fails even under the negligence standard he urges— which was submitted to the jury in this case—it is unnecessary to adopt any of the three approaches here.

### B. Gil–Perez's Theory of Liability

The court of appeals concluded that Gil–Perez proceeded on multiple theories of negligence, including negligent supervision, negligent instruction and organization of the game, as well as failure to provide protective equipment. 79 S.W.3d at 580. Construing the pleadings liberally in Gil–Perez's favor, we acknowledge that Gil–Perez did generally allege these various negligence theories. However, we conclude that only one alleged causal nexus underlies each of his claims-that Southwest Key, through its employee, Gracia, allowed Gil–Perez to play tackle football without providing protective equipment. Our conclusion is well supported by the record.

First, Gil–Perez's Original Petition to the trial court states, "Although responsible for their safety and supervision, Defendants' employees allowed the boys, including the Plaintiff, to play ... tackle football *without providing any protective gear or equipment.* ... Plaintiff[ ] would show that ... [his] injuries and damages, were the proximate result of the negligence of Defendants." (Emphasis added.) Second, on two separate occasions in pretrial proceedings, Gil–Perez's counsel explained his client's allegations to the court, limiting them as follows:

> [Counsel]: Of course, *I have alleged in my petition that it was negligent to allow him to play this game without equipment.* If they were going to play it, they should have been given equipment.
>
> . . . .
>
> [Counsel]: My allegation is that—one of my allegations[2] is that *these boys*

---

**2.** Although Gil–Perez's counsel alluded to the presence of additional claims against South-   west Key, the record reflects that he never

*should never have been allowed to play a game without ... protective equipment.* Now, that's what the proof—

*The Court:* That's what you're going to be limiting it to?

*[Counsel]:* Well, yeah.

. . . .

*[Counsel]:* And I just want to make it clear, my allegation is—one of my allegations is *they should not have played tackle since they didn't have equipment.*

(Emphasis added.) Next, and perhaps most telling, is Gil–Perez's own testimony, when he recited from his prior sworn deposition testimony in response to questions by Southwest Key's counsel:

*[Counsel (reading from the deposition)]:* Question, "And I take it by virtue of the fact that you filed a lawsuit, that you believe Southwest Key Program did something wrong, or maybe not. *Do you have a view in terms of whether or not Southwest Key Program did anything wrong?*"

*[Gil–Perez (reading from the deposition)]:* Answer, "Well, yes. *They didn't provide us any equipment* to go play there."

*[Counsel]:* Question, "Okay. Is there any other claims [sic] that you have against Southwest Key Program or *is there any other reason, other than that, that you think they did anything wrong?*"

*[Gil–Perez]:* Answer, "No, I don't believe."

(Emphasis added.)

Finally, Gil–Perez argues here that because Southwest Key assumed custody, control, and care of Gil–Perez, it was under a duty to avoid any affirmative act that may worsen his situation. He contends that Gracia breached this duty by "negli-

gent[ly] organiz[ing] and supervisi[ng] ... th[e] game of tackle football *without proper equipment*" when "more reasonable alternatives such as soccer or touch football" existed. (Emphasis added.) Alternatively, Gil–Perez argues that the tackle football game need not have been played at all. Although Gil–Perez contends that other non-negligent options—such as touch football or not playing football at all—were available, that has no bearing on whether Gracia's decision to allow the boys to play tackle football proximately caused Gil–Perez's injury. The fact that a defendant could have chosen not to do an allegedly negligent act or could have chosen to do some other act—which would undoubtedly be true in every negligence case—is irrelevant to whether the allegedly negligent act *actually caused* the plaintiff's injury. Here, it appears clear that the crux of all of Gil–Perez's "theories" of negligence is that but for the lack of protective equipment, he would not have been injured. In fact, in his brief to this Court, Gil–Perez states that his "primary allegation" is that Southwest Key was negligent in "setting up and playing a game of tackle football *when no equipment was available.*" (Emphasis added.) Moreover, the brief reiterates that Gil–Perez's *"theory remains* that a reasonable supervisor of minors should not and would not organize a game of ... tackle football *without the safety gear and football equipment* necessary to make such a game reasonably safe." (Emphasis added.) Thus, we can only conclude that, at bottom, each of Gil–Perez's negligence theories depends on whether the lack of protective equipment actually caused his knee injury.

## C. No–Evidence Review

■ In order to recover under any of his various negligence theories, Gil–Perez

asserted any additional claims in the petition

after making this statement to the trial court.

must establish that Southwest Key owed a duty, the breach of which proximately caused his knee injury. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Assuming, as Gil–Perez argues, that Southwest Key owed him a duty to avoid any affirmative act that may have endangered his safety or welfare, and that this duty was breached when Gracia allowed him to play football without protective gear, Gil–Perez must still offer evidence that this breach was the proximate cause of the injury he alleges. Southwest Key contends that Gil–Perez's claim must fail because the evidence is legally insufficient to show that the lack of equipment proximately caused Gil–Perez's injury. We agree.

▮▮▮▮ Proximate cause incorporates two elements: foreseeability and cause in fact. *Boys Clubs of Greater Dallas,* 907 S.W.2d at 477. The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger his or her negligence creates. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex. 1987). To establish cause in fact, or "but for" causation, Gil–Perez must show that Southwest Key's negligence was a substantial factor in bringing about his injury and without which no harm would have been incurred. *Id.; see also Prudential Ins. Co. v. Jefferson Assocs.,* 896 S.W.2d 156, 161 (Tex.1995); *Mo. Pac. R.R. Co. v. Am. Statesman,* 552 S.W.2d 99, 103 (Tex.1977). While examining the record to determine if there is sufficient evidence of causation, we must view the evidence in a light that tends to support the finding of causation and disregard all evidence and inferences to the contrary. *See Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001).

We assume, without deciding, that Gil–Perez adduced sufficient evidence that Gracia should have been able to anticipate the danger of allowing the boys to play the game without protective equipment. Even if Gracia's decision was improper, the issue we must decide is whether Gil–Perez has established that the lack of protective gear was the cause in fact of his knee injury. To begin with, the direct examination of Dr. Calhoun, Gil–Perez's expert witness, failed to establish causation. The bulk of the testimony related to the type of injury Gil–Perez sustained, his treatment, how much pain he likely suffered, and how his injury affected his daily life. In response to a question regarding whether Dr. Calhoun was able to tell from his review of the medical records how it was that the injury was sustained, he replied, "It indicated that he had injured his knee while playing football." The only other exchange relating to causation went as follows:

> *[Counsel]:* Dr. Calhoun, do you have an opinion based upon reasonable medical probability and based upon your review of the Brownsville medical record as to what it was that caused the dislocation that [Gil–Perez] presented to the medical center there with?
>
> *[Dr. Calhoun]:* Both in the records at Brownsville as well as our records here at Galveston, the patient gave the history of having injured his knee while playing football.

Thus, while Dr. Calhoun's direct testimony did establish that Gil–Perez was injured during the football game, a fact that the parties do not dispute, the testimony did not establish that Gracia's failure to provide protective equipment resulted in Gil–Perez's injury. In fact, not until Dr. Calhoun was cross-examined by opposing counsel was the causation issue brought into focus. The following is all of Dr. Calhoun's testimony regarding causation:

> *[Counsel]:* Have you treated patients in the past with similar knee injuries as Mr. Perez['s] which arose from playing sports?

[Dr. Calhoun]: Yes.

[Counsel]: Okay. If Mr. Perez would have been wearing some form of protective equipment, could this injury still have occurred?

[Dr. Calhoun]: Perhaps. Speculation. There's a lot of work on knee braces protecting from sports injuries. It's very controversial as to whether that's true.

. . . . .

[Counsel]: Okay. Well, have you ever treated patients in the past or provided medical care and treatment to patients with similar injuries as Mr. Perez from playing sports who were, in fact, wearing some type of protective equipment that still got injured?

[Dr. Calhoun]: I don't recall treating a patient that had an injury to the knee that was wearing a brace, a dislocation injury to the knee that was wearing a brace.

[Counsel]: Okay. And that is possible for that type of injury to occur?

[Dr. Calhoun]: I think it's possible.

. . . . .

[Counsel]: Okay. Doctor, based upon a degree of reasonable medical certainty and probability and your knowledge as well, is there any form of protective gear or equipment that would absolutely prohibit or guarantee this type of injury from occurring?

[Dr. Calhoun]: No.

None of Dr. Calhoun's testimony established that it was more probable than not that Gil–Perez would not have been injured had he been wearing ordinary protective gear. Thus, because Dr. Calhoun's testimony is legally insufficient to support the jury's finding, and because there is no other evidence in the record connecting the injury to the failure to provide ordinary protective gear—the only alleged causal nexus—Gil-Perez has failed to properly establish that Southwest Key's negligence was the proximate cause of his knee injury. In addition, while Gil–Perez asserts as one of his "additional claims" that Southwest Key was also negligent in failing to properly train the boys before allowing them to play tackle football, his brief focuses strictly on the failure to provide equipment, and our review of the record confirms that Gil–Perez offered no evidence that the failure to train proximately caused his injury.

### III. Conclusion

In sum, we conclude that the evidence is legally insufficient to support the jury's finding that Southwest Key's negligence was the proximate cause of Gil–Perez's knee injury. Accordingly, we reverse the court of appeals' judgment and render judgment that Gil–Perez take nothing.

Justice O'NEILL filed a dissenting opinion, in which Justice HANKINSON joined.

Justice O'NEILL filed a dissenting opinion, in which Justice HANKINSON joined.

The Court determines that Southwest Key's failure to provide protective equipment is the single "causal nexus" that underlies Gil–Perez's negligence theories, then concludes that there is no evidence that lack of equipment proximately caused Gil–Perez's injuries. But the Court conducts an improper legal-sufficiency review by considering evidence contrary to the verdict and ignoring testimony that supports causation. Because there is some evidence to support the jury's causation finding, I would affirm the court of appeals' judgment. Accordingly, I respectfully dissent.

Dr. Calhoun testified, as the Court recounts, that it was possible for an injury like Gil–Perez's to occur even with protective gear, and that there was no guarantee that protective equipment would always prevent an injury like Gil–Perez's from occurring. But he also testified that in his extensive experience, which included treating "many" sports-injury patients, and "patients ... with similar knee injuries as Mr. Perez'[s] which arose from playing sports," he had never treated a patient with a similar knee injury who had worn a brace:

> [Counsel]: Okay. Well, have you ever treated patients in the past or provided medical care and treatment to patients with similar injuries as Mr. Perez from playing sports who were, in fact, wearing some type of protective equipment that still got injured?
>
> [Dr. Calhoun]: I don't recall treating a patient that had an injury to the knee that was wearing a brace, a dislocation injury to the knee that was wearing a brace.

Gil–Perez was not required to show that if Southwest Key had provided protective gear his safety was "absolute" or "guaranteed." Rather, he had to show it was more likely than not that, but for Southwest Key's failure to provide safety equipment, Gil–Perez would not have dislocated his knee.

Gil–Perez contends Southwest Key and its employees were negligent in allowing the boys to play full-contact tackle football without equipment when reasonable alternative activities, including soccer and touch football, were available. Gil–Perez was tackled and, as a result, suffered a dislocated knee. Given the common knowledge that tackle football is an intensely physical sport with a high risk of injury, and Dr. Calhoun's testimony that he did not recall ever treating a patient with similar injuries

who had worn a brace, the jury could have concluded that Southwest Key's negligence in allowing Gil–Perez to play tackle football was a "substantial factor" in bringing about his injury. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 784 (Tex. 2001). Viewing the evidence in a light that tends to support the jury's verdict and disregarding all evidence and inferences to the contrary, *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001), I would hold the evidence legally sufficient to support the jury's causation finding. Because the Court holds otherwise, I respectfully dissent.