Affirmed and Majority Memorandum Opinion filed May 15, 2008








Affirmed and Majority Memorandum Opinion filed May 15, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00518-CV

____________

 

DAVID AND CAROLYN AXELRAD, Appellants

 

V.

 

DR. RICHARD JACKSON, Appellee

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 99-52855

 



 

M A J O R I T Y   M E M O R A N D U M  O P I N I O N 








This medical malpractice case is on remand from the Texas
Supreme Court for factual-sufficiency review of the evidence to support the
following jury findings: (1) the patient, appellant David Axelrad, was
negligent; (2) his negligence was a proximate cause of the occurrence in
question; and (3) fifty-one percent of the responsibility for the occurrence
was attributable to him.  Based on these findings, the trial court rendered
judgment that the Axelrads take nothing.[1] 
We affirm.

I.  FACTUAL AND PROCEDURAL
BACKGROUND

The two prior opinions in this case contain detailed
descriptions of the factual and procedural background.  See Jackson v.
Axelrad, 221 S.W.3d 650, 651B53 (Tex. 2007); Axelrad
v. Jackson, 142 S.W.3d 418, 421B22 (Tex. App.CHouston [14th Dist.]
2004), rev=d, 221 S.W.3d 650 (Tex. 2007).  We
do not repeat them in this memorandum opinion. 

On remand, Axelrad challenges factual sufficiency of the
evidence to support the jury=s findings.  Specifically, he challenges
the jury=s findings on
questions one and two of the charge.  In response to question one, the jury
found Axelrad=s  Anegligence, if any, . . . proximately
cause[d] the occurrence in question.@  In response to
question two, the jury found fifty-one percent of the negligence that caused
the occurrence was attributable to Axelrad and forty-nine percent was
attributable to appellee, Dr. Richard Jackson, who was  Axelrad=s physician.[2]


II. STANDARD OF REVIEW








When reviewing a challenge to factual sufficiency of the
evidence, we examine the entire record, considering both the evidence in favor
of, and contrary to, the challenged finding.  See Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986).  The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given to their testimony.  GTE
Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  The amount of evidence necessary to affirm a
judgment is far less than the amount necessary to reverse a judgment.  Id.
at 616.  After considering and weighing all the evidence, we set aside the fact
finding only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986) (per curiam).  Because we are not the fact finder, we may not substitute
our own judgment for that of the trier of fact, even if we would reach a
different answer on the evidence.  Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex. 1998).  Although when reversing a jury verdict, a court
of appeals must detail the evidence and clearly state why the jury=s finding is
factually insufficient, it need not do so when affirming a jury verdict.  Gonzalez
v. McAllen Med. Ctr., Inc., 195 S.W.3d 680, 681 (Tex. 2006) (per curiam). 

III.  ANALYSIS

A.      Axelrad=s Negligence

 

In his first issue, Axelrad argues the evidence was
factually insufficient to support the jury=s finding that he
was negligent under the theory he should have recognized the significance of
the origin and location of his pain when he communicated with  Dr. Jackson.[3] 
As the supreme court explained when concluding the evidence was legally
sufficient under this theory:

Patients have no duty to diagnose themselves (as doctors are licensed
and paid to do that), but neither can they demand treatment for a condition
they refuse to disclose.  All the trial experts agreed patients have a duty to
cooperate in diagnosis by giving an accurate medical history.








Of course, there are cases in which a patient=s condition is so obvious that
cooperation is unnecessary, or so debilitating that it is impossible.  But such
cases do not suggest there should be no duty to cooperate;  they suggest only
that a patient=s condition may discharge it.  Like
any reasonable‑person standard, a patient=s duty to cooperate requires only ordinary care
under all the surrounding circumstances.

 

Jackson, 221 S.W.3d at
654.








In our previous opinion, a majority concluded, consistent
with a number of sister-state  jurisdictions, that evidence of negligence on
the part of Axelrad is not legally sufficient unless there is some evidence he
was actually aware of the diagnostic significance of the unreported
history.  Axelrad, 142 S.W.3d at 426B27.[4] 
The Texas Supreme Court disagreed and stated that the question in this case
is:  Awhether there was
evidence from which reasonable jurors could infer Axelrad either knew or
should have known he needed to report this information.@  Jackson,
221 S.W.3d at 658. Under the supreme court=s ruling, an Aordinary@ patient will not
be assessed negligence for what he should have known.  However, the jury is
allowed to Ainfer@ that an
extraordinary or very intelligent patient  knew the significance of a
particular symptom but failed to report it.  

The trial court instructed the jury that Anegligence,@ as used in
relation to Axelrad=s conduct, meant Afailure to use
ordinary care, that is, failing to do that which a person of ordinary prudence
would have done under the same or similar circumstances, or doing that which a
person of ordinary prudence would not have done under the same or similar
circumstances.@  The supreme court peered into the penumbra and
divined the following from the jury charge: Aasking whether
Axelrad exhibited ordinary prudence under the same or similar circumstances[,]
at least allowed jurors to consider his training, even if it did not instruct
them to do so.@  Id. at 657.  Notwithstanding the absence of a
clear jury instruction on whether Axelrad knew or should have known about the
significance of a particular symptom, in determining factual sufficiency of the
evidence, we are necessarily confined to the supreme court=s pronouncements
of Texas law.  Accordingly, on remand, we must also consider whether there is
factually sufficient evidence to support the jury=s conclusion that
Axelrad failed to report symptoms he Ashould have known@ were significant
to accurate diagnosis of his condition.

Axelrad=s experience and training included passing
judgment on other doctors as a member of state medical boards in California and
Texas, giving more than 150 depositions as an expert in medical negligence
cases, and four years practicing as an emergency room physician which included A>a lot of
opportunities to examine abdomens.=@ Id. 
Additionally, his psychiatry practice included pain management.








However,  Axelrad points to the following evidence: he is a
psychiatrist, not an internist; he was very ill when Dr. Jackson saw him; his
knowledge about the significance of the point of origin of his pain was gained
post-treatment; and his areas of litigation expertise were unrelated to the
significance of the origin of his pain.  In each of these areas, however, the
parties presented differing interpretations of the evidence.  For example,
Axelrad characterizes his condition as being Adeathly ill@ and hardly able
to speak when he saw Dr. Jackson.  In contrast, Dr. Jackson described Axelrad
as looking Auncomfortable, but not deathly sick.@  Dr. Jackson also
testified that  AMrs. Axelrad . . . gave most of the
history. . . . I listened to her, and he punctuated some information about
that.  And they told me about the discomfort . . . he was having.@

Additionally, the jury was presented with conflicts within
Axelrad=s testimony. 
According to Dr. Jackson=s testimony, Axelrad did not tell him the
pain originated in the lower left quadrant of his abdomen.  This testimony is
consistent with Axelrad=s deposition testimony, which the jury
heard.  At trial, however, Axelrad testified he did tell Dr. Jackson the pain
originated in the lower left abdominal quadrant. The supreme court noted what
Axelrad=s counsel said in
opening argument: Aour grandmothers could all diagnose
diverticulitis if you came in and said, >I have left lower
quadrant pain.= @  Jackson, 221 S.W.3d at 657B58.  The court
further suggested that if jurors did not credit this evidence in favor of
Axelrad, Ait strengthened an inference that he (Axelrad) failed
to exercise ordinary care when he failed to mention it.@ Id.  It
was for the jury to judge the credibility of the witnesses and to decide the
weight to be given to the testimony.  See Pascouet, 61 S.W.3d at 615B16.  Although we
might reach a different answer on the evidence, we may not substitute our own
judgment for that of the jury.  See Ellis, 971 S.W.2d at 407.

After considering both the evidence in favor of, and
contrary to, the challenged finding, we hold the evidence was factually
sufficient to support the jury=s finding that Axelrad was negligent on
the theory that he knew or should have known but failed to disclose the
specific origin and location of his abdominal pain.  Axelrad=s first issue is
overruled.

B.      Proximate
Cause








In his second issue, Axelrad argues the evidence was factually
insufficient to support the jury=s finding that his
negligence was a proximate cause of the occurrence in question.  The elements
of proximate cause are cause in fact and foreseeability.  IHS Cedars
Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex.
2004).  Cause in fact, or Abut for@ causation, means
the party=s negligence was a substantial factor in bringing
about the injury in question, and without which no harm would have been
incurred.  See S. W. Key Program, Inc. v. Gil‑Perez, 81 S.W.3d
269, 274 (Tex. 2002).  The test for foreseeability is whether a person of
ordinary intelligence would have anticipated the danger his or her negligence
creates.  Id.  Foreseeability does not require the actor to anticipate
just how the injuries will grow out of the particular dangerous situation.  Mo.
Pac. R.R. v. Am. Statesman, 552 S.W.2d 99, 103 (Tex. 1977).[5] 
The trial court instructed the jury accordingly:

AProximate cause,@ when used with respect to the conduct of David Axelrad,
means that cause which, in a natural and continuous sequence, produces an
event, and without which cause such event would not have occurred.  In order to
be a proximate cause, the act or omission complained of must be such that a
person using ordinary care would have foreseen that the event, or some similar
event, might reasonably result therefrom.  There may be more than one proximate
cause of an event.

 

In response to Axelrad=s
legal-sufficiency challenge to proximate cause, the supreme court observed that
the jury could have found a causal connection from the following evidence:  AAxelrad=s own expert
testified >the only reasonable explanation= for the colon
perforation and subsequent events was >the administration
of that enema.=   Dr. Jackson testified had he known Axelrad=s pain began in
the left lower quadrant, he would have suspected diverticulitis and not
prescribed an enema.@  Jackson, 221 S.W.3d at 658.








However, as Axelrad correctly represents, Dr. Jackson did
not make so direct a connection.  Instead, Dr. Jackson=s testimony can
more accurately be summarized as indicating (1) the specific signs and symptoms
of diverticulitis include fever, left lower quadrant abdominal pain, and
usually constipation; (2) if Axelrad had presented with those symptoms, Dr.
Jackson would have looked at the case quite differently; (3) if Dr. Jackson had
known Axelrad had diverticulitis, Dr. Jackson would not have ordered an enema; 
but (4)  Axelrad reported no fever, reported diarrhea rather than constipation,
and reported diffuse abdominal pain, the Avirtual[] opposite@ of the
constellation of symptoms related to diverticulitis.

Nevertheless, the jury also heard evidence that the
symptoms Axelrad actually presented were not so clearly defined and  mere
suspicion of diverticulitis would have alerted  Dr. Jackson not to order an
enema.  Dr. Jackson=s expert, Dr. Nicholas Sollenne, testified
as follows:

Q       Now, also assume with me B and you have read the depositions B one thing all the doctors in this
case agree on, sir B that=s Dr. Reardon, Dr. Dobbs and Dr. Canter and indeed
Dr. Jackson B is that if you suspicion
diverticulitis, it is never appropriate to order an enema, right?

A       I agree.

Q       So that is one thing that we all are in full
agreement on in this case.  That=s not even an issue in your mind?

A       I agree.

 

Additionally, although Dr. Jackson=s record indicated
Axelrad reported no fever, Axelrad testified he had reported low grade fever
when he called the night before he was examined, and Dr. Jackson did not take
Axelrad=s temperature
during the examination.  Finally, although Axelrad may have reported diarrhea,
Dr. Jackson stated he could not say Axelrad had constipation because his KUB
(kidneys, ureter, and bladder x-ray) showed stool in two locations.








In sum, after examining the entire record and considering
both the evidence in favor of, and contrary to, the finding in question one, we
conclude the evidence was factually sufficient to support the jury=s finding that
Axelrad=s negligence was a
proximate cause of the occurrence in question (i.e., administration of the
enema, which in turn caused damage to Axelrad=s colon).  See
Pool, 715 S.W.2d at 635.  Accordingly, we overrule Axelrad=s second issue.

C.      Proportionate
Responsibility

In his third issue, Axelrad argues the evidence was factually
insufficient to support the jury=s finding that
Axelrad was proportionately more responsible than Dr. Jackson.  In question
two, the jury found forty-nine percent of the negligence causing the occurrence
attributable to Dr. Jackson and fifty-one percent attributable to Axelrad.

The jury is given wide latitude in performing its sworn
duty to serve as fact finder in allocating responsibility.  Ramirez v. Fifth
Club, Inc., 144 S.W.3d 574, 589 (Tex. App.CAustin 2004), rev=d in part on other
grounds, 196 S.W.3d 788 (Tex. 2006); see Tex. Civ. Prac. & Rem.
Code Ann. ' 33.003 (Vernon Supp. 2007).  Even if the evidence
could support a different percentage allocation of responsibility, we may not
substitute our judgment for that of the jury.  See Samco Properties, Inc. v.
Cheatham, 977 S.W.2d 469, 478 (Tex. App.CHouston [14th
Dist.] 1998, pet. denied).

In his argument on this issue, Axelrad essentially
characterizes himself as a non-physician patient.  Although Axelrad cites Dr.
Jackson=s credentials to
argue AJackson=s knowledge of the
relevant medical science involved was superior to Axelrad=s,@ Axelrad virtually
ignores evidence of his own credentials.  However, as the supreme court stated,
AHaving presented
himself to jurors as a person with superior knowledge, he [Axelrad] cannot
complain that jurors might have taken him at his word.@  Jackson,
221 S.W.3d at 657. 








In this case of first impression, the Texas Supreme Court
has prescribed the patient=s legal duty relative to communication of
medical history in a misdiagnosis case.  On remand, we have duly regarded the
parameters of that duty in determining whether the evidence is factually
sufficient to support the jury=s verdict.  We also note that the case law
on which Axelrad relies involves non-physician patients and is therefore
inapposite given the supreme court=s  instruction
that jurors, in analyzing the Asame or similar circumstances@ are allowed to
consider a physician patient=s special knowledge.  See id.  

Having considered and weighed all the evidence, we conclude
the jury=s apportionment of
responsibility is not so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.  See Cain, 709 S.W.2d at 176.[6] 
Because the evidence is factually sufficient to support the jury=s finding on this question,
we overrule Axelrad=s third issue.

IV.  CONCLUSION

On remand, consistent with the
supreme court=s determination of Axelrad=s legal duties in this
medical-malpractice misdiagnosis case, we overrule Axelrad=s three issues.  Accordingly, we
affirm the judgment of the trial court.

 

 

 

/s/      Charles Seymore

Justice

 

 

Judgment rendered
and Majority Memorandum Opinion filed May 15, 2008.

Panel consists of Justices Anderson, Seymore, and Guzman. (
Guzman, J.,  concurs without opinion).









[1]  Although Axelrad is also a physician, we will follow
the convention of the prior opinions and refer only to Jackson by his
professional title.





[2]  See Tex.
R. App. P. 47.4 (stating, if issues are settled, court should write
brief memorandum opinion no longer than necessary to advise parties of court=s decision and basic reasons for it).





[3]  At trial, Dr. Jackson proposed two additional
theories under which Axelrad was allegedly negligent.  Jackson argued Axelrad
was negligent for not taking care of his own health in the years preceding the
occurrence in question and for not reporting he had undergone a proctoscope in
1994 with a resulting recommendation for a colonoscopy.  See Axelrad v.
Jackson, 142 S.W.3d 418, 425, 428 (Tex. App.CHouston [14th Dist.] 2004), rev=d, 221
S.W.3d 650 (Tex. 2007).  This court held (1) Axelrad could not be considered
comparatively negligent in relation to the former, and (2) there was no
evidence of causation in relation to the latter.  See id. at 427B29.  In the supreme court, Jackson did not contest
either of these holdings.  See Jackson v. Axelrad, 221 S.W.3d 650, 652 (Tex. 2007).  Our factual-sufficiency review is therefore confined
to the claim that Axelrad was negligent in failing to recognize and report the
origin of the pain.





[4]  See
Graham v. Keuchel, 847 P.2d 342,
358 (Okl. 1993) (holding patient=s knowledge of importance of her blood type and need
to receive Rho-GAM shot during pregnancy but failure to advise doctors during
her fifth pregnancy was some evidence of contributory negligence); Haynes v.
Hoffman, 296 S.E.2d 216, 217 (Ga. Ct. App. 1982) (AIf a patient is aware that the physician is unaware of some aspect of
the patient=s medical history which may involve a risk of harm
to the patient, then ordinary care requires that the patient volunteer this
additional information to the treating physician.@); Mackey
v. Greenview Hosp., Inc., 587 S.W.2d 249, 255 (Ky. Ct. App. 1979) (AA patient is contributorily negligent only if he knows the physician is
unaware of a condition which imposes a risk of danger to the patient and his
failure to inform the physician is unreasonable under the circumstances.@). Although not cited in our earlier opinion, a number of other
jurisdictions also seem to require actual knowledge. Fall v. White, 449
N.E.2d 628, 632B34 (Ind. Ct. App. 1983) (finding trial court
correctly instructed jury on contributory negligence when evidence demonstrated
patient knew of importance in giving complete and accurate information to
physician); Jamas v. Krpan, 568 P.2d 1114, 1115B16 (Ariz. Ct. App. 1977) (holding testimony that patient who knew
significance of breast lumps due to past history of breast lumps and treating
physician=s instruction to return to have breasts examined
raised jury question regarding contributory negligence); but cf. Moodie v.
Santoni, 441 A.2d 323, 325B26 (Md. 1982) (holding contributory negligence
instruction should be given to the jury when patient may have had actual
knowledge of the importance of reporting certain symptoms but applying a Aknew or should have known@ standard).

 

 





[5]  Axelrad does not contend the analysis of
foreseeability in relation to duty is different from the analysis of
foreseeability in relation to proximate cause.  See Mellon Mortgage Co. v.
Holder, 5 S.W.3d 654, 663 (Tex. 1999) (Baker, J., concurring) (expressing
concern about improper bootstrapping of proximate‑cause foreseeability
into the threshold duty question).  Instead, Axelrad argues only that the
evidence of foreseeability was factually insufficient for the same reasons the
evidence was factually insufficient to support the jury=s finding he should have known the significance of the
origin of his pain.  In section III. A., above, we held the evidence was
factually sufficient to support this finding.   





[6]  Axelrad also argues that the jury=s verdict was the result of bias and prejudice, rather
than evidence.  After reviewing the entire record in which each party
vigorously attacked the credibility of the other, we cannot conclude that the
jury=s verdict was clearly wrong or unjust.  See Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).