NO. 07-10-00277-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 23, 2012

SCOTT'S MARINA AT LAKE GRAPEVINE LTD., D/B/A
SILVER LAKE MARINA, JUST FOR FUN OF NORTH
TEXAS, INC. AND SILVER LAKE MARINA STORE, INC.,
APPELLANTS

v.

ALLEN JOHNATHAN BROWN, APPELLEE

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY;

NO. 342-213092-05; HONORABLE BOB MCGRATH, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**DISSENTING OPINION**

The Court's opinion discusses the admissibility of the opinion testimony of Itzhak Brook, M.D., finds it reliable and concludes the trial court did not err by admitting it. I express no opinion on that discussion. As I read appellants' briefs, however, they challenge also the sufficiency of the evidence of causation, arguing it was legally insufficient to support the jury's verdict. I agree with appellants, and would therefore sustain the issues of appellants on this ground.

The sufficiency of appellee Allen Johnathan Brown's evidence of causation depends on the testimony of Dr. Brook.  At trial, Dr. Brook testified that enteroviruses are common viral forms.[1]  He explained that enterovirus is found in the feces and other excretions of people "who are sick."[2]  It is also found in saliva and nasal mucus and can survive in water.  Until it dries and dies, it can survive on an object.  Dr. Brook did not know how long enterovirus survives in lake water and offered no opinion how long it survives in wastewater.  Frequently during his testimony Dr. Brook used the terms "sewage" and "wastewater."  On cross-examination he agreed that wastewater meant water containing urine, feces, water from human hand washing, and "possibly other debris."  And sewage referred to fecal material and urine.

Dr. Brook predicated his testimony and opinions on the assumption that Brown was exposed to "wastewater" and "sewage" through the "spillage" in the marina store. He believed the spillage was sewage because, "[t]he water looked dirty, they (sic) smelled bad, they smelled like sewage."  But he knew not whether an analysis was

---

[1] He agreed with the statement enteroviruses are one of the most common forms of viruses "second to the common cold."

[2] According to a brochure included in Brown's medical records, "[e]nteroviruses are small viruses.  The enteroviruses that occur in the United States include coxsackieviruses and echoviruses.  Polioviruses are also included in the term "enterovirus," but they have been eradicated from the United States by vaccination.  In all, more than 60 different types of enteroviruses have been identified."  A medical dictionary defines enterovirus as "[a] genus of picornaviruses, including polioviruses, coxsackieviruses, and echoviruses, that infect the gastrointestinal tract and often spread to other areas of the body, especially the nervous system." The American Heritage, Stedman's Medical Dictionary 269 (2002).

performed to determine the content of the material to which Brown was exposed.[3] And without elaboration or source, Dr. Brook stated flatly, "the virus was in the spillage; sewage contains a lot of viruses."

Thus Brown contracted an enterovirus, Dr. Brook opined, either from exposure to human fecal material bearing the virus or water from the hand-washing of individuals who had contacted the virus. Concerning the means of exposure, Dr. Brook concluded, "there's a lot of possibilities."[4]

Ultimately, Dr. Brook opined that Brown's exposure to "the sewage spillage" was a proximate cause of Brown's viral meningitis and Lemierre's Syndrome diagnoses. He agreed that to a reasonable medical probability Brown's exposure to the sewage

---

[3] Evidence showed neither the liquid nor any of its contents was tested. Later, on cross-examination, Dr. Brook agreed that testing a sample of the spillage would have allowed him to offer more accurate opinions. He added, however, "there are a lot of other circumstantial information that allows me to deduce it without having the sample."

[4] Dr. Brook referred to enterovirus as "a virus we know that lives or is present in sewage, in places where water that is dirty and contaminated," and further testified:

A. It is called the name, "entero," because it usually is found in the gastrointestinal tract, and is often found in the stool and other excretions of people who are sick.
Q. Okay.
A. It can also be found in the hands of people who don't wash their hands. Now, theoretically and practically, the workers – and that's why they warn people who work in restaurants, to wash your hands.
Q. All right.
A. If somebody's infected with enterovirus, and they go to the bathroom, don't wash their hands, and go back and prepare food, this is how people can get infected.
Q. Okay.
A. Or if they wash their hands, that water that they wash their hands in, may go to the sewage and contaminate the sewage, as well.
Q. Okay.
A. So there's a lot of possibilities.

3

spillage in the marina store was a proximate cause of the "cascade of medical events that [Brown] experienced[.]" He acknowledged there could be other ways Brown contracted Lemierre's Syndrome besides exposure to the substance in the marina store, but found these possibilities inconsistent with Brown's "story."

Establishing proximate cause requires a sufficient showing of cause in fact and foreseeability. *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002). Proof based on conjecture, guess or speculation does not satisfy these elements. *IHS Cedars Treatment Center, Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex. 2004). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id. See Southwest Key Program, Inc. v. Gil-Perez,* 81 S.W.3d 269, 270, 275 (Tex. 2002) (finding evidence legally insufficient when expert's testimony, which was only evidence of causal nexus, failed to establish it was more probable than not that plaintiff would not have been injured but for defendant's failure to provide ordinary protective gear); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex. 1991) ("In order to be [a proximate cause] of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent . . . . This is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm." (quoting Restatement (Second) of Torts § 431, comment a (1965))).

In cases of exposure to a toxic substance, there is often no direct evidence of causation. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 715 (Tex. 1997). Direct experimentation of the toxic substance to which the injured person was

4

exposed cannot be performed and there is, therefore, no reliable direct evidence of specific causation. *Id.* That is the case here. The substances Brown mopped up were not tested, so there is no direct evidence the substances were contaminated with enterovirus.

Plaintiffs may, nevertheless, rely on epidemiological studies demonstrating an increased risk of their particular injury resulting from exposure to the substance in question to create a fact issue on causation. *Havner,* 953 S.W.2d at 715, 720.

But we are not told of epidemiological studies demonstrating the risk of contracting enterovirus from exposure to wastewater containing human sewage. Does all human feces contain an enterovirus? If, as Dr. Brook testified, enterovirus is found in the bodily excretions of people who are "sick," what percentage of the Tarrant County population is "sick" in that way at any one time? Both testifying experts, Drs. Brook and Sloan, agreed oral-fecal contact is the "most common" and the "primary" means through which an enterovirus enters the body, but such a statement does not tell anything about the likelihood that any particular sample of feces or wastewater contains an enterovirus.

Nor does testimony that enteroviruses are common in the United States substitute for an epidemiological study demonstrating the likelihood that contact with wastewater containing human sewage will lead to infection by enterovirus. In short, the evidence shows a culture of Brown's spinal fluid grew the enterovirus and for this purpose I will assume the jury had a basis to conclude he had contact with "wastewater" containing human sewage. But nothing in this record provides a foundation for Dr. Brook's assumption he contracted the enterovirus from that wastewater.

This case is similar to *Schaefer v. Texas Employers' Insurance Association,* 612 S.W.2d 199 (Tex. 1980), discussed in *Havner*, 953 S.W.2d at 711-12. There it was undisputed that the plaintiff's disease was caused by a bacteria, of which some serotypes were pathogenic to birds. *Id.* at 200. In the opinion of the plaintiff's expert, plaintiff contracted the disease while working in soil containing bird feces. *Id.* at 204. The evidence did not show, however, that the bacteria causing the plaintiff's disease was present in the soil where he worked. *Id.* at 202. Also missing was serotyping to determine whether the plaintiff suffered from an avian strain of the disease. *Id.* at 201.[5] The supreme court accordingly held that the expert's testimony "does no more than suggest a possibility as to how or when [the plaintiff] was exposed to or contracted the disease. We hold that his opinion is not based upon reasonable medical probability but relies on mere possibility, speculation, and surmise." *Id.* at 204.

Despite the fact enteroviruses will survive[6] in environments such as lake water and testimony Brown enjoyed wakeboarding on the lake, the presence of enteroviruses in excretions other than feces, such as saliva and mucus, and his own testimony identifying "lots of possibilities," Dr. Brook ruled out other possible sources of Brown's virus with the conclusion, "I was able to rule out any other causes in this case."[7] This

_____

[5] Although the parties do not discuss it, similarly missing from this record is any evidence of the group or serotype of the enterovirus Brown's culture grew.

[6] Such viruses will survive in such an environment but will not multiply, according to Dr. Brook.

[7] Responding to a question about the possibility of exposure to an enterovirus from changing a diaper, Dr. Brook said:

6

conclusory approach to other possible sources alone points to the speculative nature of Dr. Brook's opinion on causation. *See Havner,* 953 S.W.2d at 720 ("[I]f there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty"); *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 559 (Tex. 1995) (finding failure of expert to rule out other causes of damage rendered opinion little more than speculation).[8]

In the health care liability context, the Texas Supreme Court recently said in *Jelinek v. Casas,* 328 S.W.3d 526 (Tex. 2010), "When the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that 'in medical probability' the injury was caused by the defendant's negligence. The expert must explain why the inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts. Thus, when the facts support several possible conclusions, only some of which establish that the defendant's negligence caused the plaintiff's injury, the expert must explain to the fact finder why those conclusions are superior based on verifiable medical evidence, not simply the expert's opinion." 328 S.W.3d at 536.

---

Theoretically, any place that has stool on it, or human excrement, can infect somebody, if they don't wash their hands. But, in [Brown's] case, we know what was the cause, that it is more likely than not that that [sic] caused it, and that was exposure to sewage water.

[8] Others also mopped the substance that backflowed into the marina store but without demonstrating signs of sickness. Dr. Brook accounted for this inconsistency with the conclusion that these individuals were "subclinical," which he later defined to mean, "somebody's ill, but they don't manifest any symptoms."

The court's discussion in *Jelinek* is equally applicable here. Nothing in this record explains why Dr. Brook's opinion Brown contracted an enterovirus from his "exposure to sewage water" is superior based on science. Rather, his opinions rested on his *ipse dixit*.[9] As evidence of causation, his opinion testimony is legally insufficient.

I would reverse the judgment of the trial court and render judgment that Brown take nothing. Because the Court does not, I respectfully dissent.

James T. Campbell
Justice

---

[9] "The term *'ipse dixit'* means 'something asserted but not proved' and is literally translated 'he himself said it.'" *Marvelli v. Alston,* 100 S.W.3d 460, 478 n.6 (Tex.App.-- Fort Worth 2003, pet. denied) (citing Black's Law Dictionary 833 (7th ed. 1999) and *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997)).