**EAST TEXAS THEATRES, INC.,**
Petitioner,

v.

**James C. RUTLEDGE et al., Respondents.**

No. B–1810.

Supreme Court of Texas.

March 18, 1970.

Rehearing Denied April 22, 1970.

Ramey, Brelsford, Flock, Devereux & Hutchins, Tracy Crawford and Mike A. Hatchell, Tyler, for petitioner.

Jones, Jones & Baldwin, Scott Baldwin and Doyle Curry, Marshall, for respondents.

SMITH, Justice.

This is a damage suit alleging personal injuries were sustained by Sheila Rutledge, on or about September 25, 1966, while attending a midnight movie in a theatre owned and operated by East Texas Theatres, Inc. Subsequent to the date of the alleged injury, Sheila married Roy Voyles. The suit was brought by Sheila, joined by her husband, against East Texas Theatres, Inc. alleging that certain acts of negligence on the part of the theatre were a proximate cause of the injuries Sheila sustained while a patron of the theatre. The parties shall be designated as plaintiffs and defendant or by name. The jury found the defendant guilty of negligence in failing to remove certain unidentified "rowdy persons" from the theatre and that such negligence was a proximate cause of Sheila's injuries. Damages were assessed by the jury at $31,250.00. Based upon the jury findings, the trial court entered judgment for the plaintiffs. The Court of Civil Appeals has affirmed. 445 S.W.2d 538. We reverse the judgments of both courts and here render judgment that the plaintiffs take nothing.

The defendant presents two major questions for our decision: (1) the error of the Court of Civil Appeals in holding that there was any probative evidence of record to support the jury finding on proximate cause, and (2) the error of the Court of Civil Appeals in holding that the testimony was sufficient to prove a causal connection between the injuries alleged to have been sustained by Sheila and her subsequent complaints of chronic headache, etc. In view of our holding on the first question, it is unnecessary to pass upon the second.

█ A full and detailed discussion of the evidence bearing on the first question is to be found in the opinion of the Court of Civil Appeals. We briefly summarize the facts. In taking this course, we are mindful of the rule that in deciding whether there is evidence in the record in support of the jury findings, we are required to view the evidence in its most favorable light in support of the verdict. Texas & Pacific Railway Co. v. McCleery, 418 S. W.2d 494 (Tex.Sup.1967); Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957).

On September 24 and the early morning of September 25, 1966, Sheila, a paying guest, was attending a special "midnight show" at the Paramount Theatre, one of the several theatres owned by the defendant. The interior of the theatre was arranged with a lower floor and a balcony for the seating of patrons. Sheila and her friends took seats on the lower floor in the left section close to an aisle which ran parallel with the left wall and out beyond the overhang of the balcony. When the picture came to an end, Sheila started making her exit, after the lights were turned on, using the aisle between the left section and the wall. As she proceeded up the aisle toward the front of the building for the purpose of leaving the theatre and just before she walked under the balcony overhang, some unidentified person in the balcony threw a bottle which struck her on the side of her head just above her left ear.

*Conduct of the Theatre Patrons*

Since the jury found that the patrons in the balcony were acting in a "rowdy" manner and that the defendant, its agents, servants and employees, negligently failed to remove such rowdy persons from the premises and that such negligence proximately caused the injuries sustained by Sheila, we deem it important to particularly point out the evidence bearing on the conduct of the patrons during the evening. The evidence favorable to the verdict is that during the progress of the show, the patrons in the theatre, both on the lower floor and in the balcony, were engaged in

"hollering." Sheila, in describing the "hollering," said that "a few slang words" were used. This "hollering" was intermittent; it occurred "off and on" during "parts of" the movie. One witness testified that " * * * they would holler and maybe slack off a few minutes and then holler again." Buddy Henderson testified that he saw paper or cold drink cups either "drifting down" or being thrown down toward the front of the theatre. Sheila did not see throwing of any type. Henderson testified that he did not recall anything drifting down or being thrown down other than the paper cold drink cups. In regard to the duration of the commotion in the theatre, the evidence shows that there was more commotion on the lower floor than in the balcony. Henderson testified that he thought that the "hollering" seemed to get worse toward the end of the show. Sheila was certain that " * * * [a]bout 30 minutes before the show was over it seemed to be quieter; they didn't seem to be as rowdy then." Sheila, Henderson and an officer by the name of Burt, all agreed in their testimony that before the show was over, and, thus, before the accident, all commotion in the theatre had ceased. The last disturbance of any kind before the show was over was not throwing but "hollering." Henderson further testified that nothing happened, whether "hollering" or the throwing of paper cups, to make him think that something bad was going to happen; he was not worried about the safety of himself or the safety of his friends or anybody that was there.

### The Balcony Patrons and Their Conduct

The balcony, which would seat 263 people, was "just about full." The witness, Burt, estimated that about 175 of the balcony seats were occupied. The disturbance in the balcony seemed to come from the balcony generally, "just all over it." The evidence does not identify any particular person as being a "rowdy person." No witness could state which persons in the balcony were rowdy and which were not. No witness could identify the person who threw the bottle. Incidentally, there is no evidence that a hard substance of any character was thrown, other than the bottle which struck Sheila. The witness, Henderson, testified that he could not identify the person who threw the bottle, but that out of the corner of his eye, he saw a "movement, a jerking motion" by someone in the balcony and then saw the bottle hit Sheila. No witness testified that the bottle thrower had been engaged in "hollering" or throwing paper cups. The jury found that Sheila's injuries were not solely caused by the action of "some unknown person who threw a bottle * * *."

■ Assuming without deciding that the finding of negligence is supported by evidence of probative force, we go direct to the question of whether there is in the record evidence or probative force to support the finding of proximate cause. We hold that there is no evidence to support the finding of the jury that the failure of the defendant to remove "rowdy persons" from its premises was a proximate cause of Sheila's injuries.

■ "Proximate cause" was defined by the trial court exactly as the definition of the term was given by the trial court in the case of Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961). Just as we said in Baumler v. Hazelwood and later in Texas & Pacific Railway Co. v. McCleery, 418 S.W.2d 494 (Tex.Sup.1967), it is well settled that proximate cause includes two essential elements: (1) there must be cause in fact—a cause which produces an event and without which the event would not have occurred; and (2) foreseeability. See also, Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951). "An essential element of the plaintiff's cause of action for negligence is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." Prosser, Law of Torts (3rd Ed.) 240–241, "Causation", 41 (1964). We base our decision here on the ground

that the plaintiffs have failed to offer evidence of probative force to establish the cause-in-fact element of proximate cause. In particular, the plaintiffs contend that the act of omission in failing to remove "rowdy persons" from the theatre was a proximate cause of the injuries resulting from the throwing of the bottle by an unknown patron of the theatre. We recognize that cause-in-fact covers the defendant's omissions as well as its acts. However, it cannot be said from this record that had the defendant removed the "rowdy persons" from the premises, the bottle thrower would not have thrown the bottle. The record in this case clearly shows a complete lack of proof that the bottle would not have been thrown "but for" the failure of the defendant to remove "rowdy persons" from the premises. There is no evidence that the bottle thrower was one of the "rowdy persons" engaged in "hollering" and throwing paper cups from the balcony. We cannot say from this evidence what persons would have been removed. We agree with the defendant's contention as made in its Motion for Instructed Verdict; Motion for Judgment non obstante veredicto; Amended Motion for New Trial; points in the Court of Civil Appeals and in this Court that the judgment of the trial court cannot be sustained in that there is no evidence that the alleged injuries were proximately caused by any act of commission or omission of the defendant. As said by this Court in Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup. 1967), "a finding of 'proximate cause' cannot be sustained unless there is proof of cause in fact and foreseeability." See Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72 (1949).

The plaintiffs further contend that cause-in-fact was proved on the theory that "it would be considerably more probable that had even minimum supervision, such as a request by theatre employees to cease such rowdy behavior, or for the policeman to even go to the balcony and stand so that he might be seen by the patrons in the balcony, would have prevented the person who did throw the bottle from doing so because of his fear of being apprehended. That the theatre, by and through its employees, in failing to give this minimum supervision or yet, the more burdensome elements submitted upon the part of the plaintiff, failure to oust persons engaging in rowdy behavior, encouraged the wrongdoer by guaranteeing his anonymity in a crowd to the point that he felt he could and did in fact, get away with throwing the bottle." This theory is related in no way to the single act of throwing the bottle. It is purely speculative as to what would have happened had the defendant attempted to remove the "rowdy persons" from the theatre. The bottle thrower may not have been present at a time when the "rowdy persons" were being ejected. If present at the time of removal of the persons who were "hollering" and throwing paper cups, it would be just a guess as to what subjective effect such action may have had upon the bottle thrower. To adopt the "guaranteed anonymity" theory would be allowing a presumption of fact to rest upon a fact presumed. This cannot be permitted. It has been so held by this Court. Texas Sling Co. v. Emanuel, 431 S.W.2d 538 (Tex.Sup.1968); Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955); Fort Worth Belt Ry. v. Jones, 106 Tex. 345, 166 S.W. 1130 (1914). The Court in the latter case said:

"A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. 'No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption.' 16 Cyc. 1051; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 304, 11 S.W. 324, * * *."

We recognize that the theatre was under a duty to exercise reasonable care for the safety of its patrons. Marek v.

Southern Enterprises, Inc., 128 Tex. 377, 99 S.W.2d 594 (1936). However, operators of theatres are not insurers of their patrons' safety. Vance v. Obadal, 256 S. W.2d 139, 140 (Tex.Civ.App.1953, writ ref.)

The judgments of the Court of Civil Appeals and the trial court are reversed and judgment is here rendered that plaintiffs take nothing.