NO. 07-01-0288-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 12, 2003
_____

JOJOS RESTAURANTS, INC.

Appellant

v.

JERMAINE MCFADDEN AND MARIA MCFADDEN,

Appellees
_____

FROM THE 129TH DISTRICT COURT OF HARRIS COUNTY;

NO. 98-38676; HON. PATRICK MIZELL, PRESIDING
_____

*Opinion*
_____

Before JOHNSON, C.J., QUINN and REAVIS, JJ.

This case involves the issue of proximate cause, in general, and the element of cause-in-fact, in particular. In accordance with the jury's verdict, judgment was entered awarding Jermaine McFadden and Maria McFadden damages against Jojo's Restaurants, Inc. (Jojo's). On appeal, Jojo's argues that there was no evidence or factually insufficient evidence to support the jury's finding that it breached any duty owed to the McFaddens or

that the breach, if any, proximately caused their injuries. So too does it allege that the trial court erred in the manner in which it proportioned liability for the damages. We need only address the issue of causation and whether the McFaddens proved same by a preponderance of the evidence. Concluding that they did not, we reverse and render judgment.

### *Background*

The McFaddens joined Charles Haywood and an individual nicknamed Peewee for an evening of camaraderie. It began around 10 p.m. and involved journeying in Haywood's car to a local nightclub. There they remained until shortly before 2 a.m. At that time, the group decided to leave and get something to eat. So, they entered Haywood's car. Haywood drove, while Peewee sat in the front passenger's seat and the McFaddens sat in the rear. The group decided to go to Jojo's, a restaurant located across the street from the nightclub.

Negotiating the traffic at that time of the morning, they drove across the street, entered a parking lot adjacent to Jojo's, and proceeded towards it. As they did, the group noticed that it was crowded. So too did they notice that the parking lot behind the restaurant was full. This caused them to decide to go elsewhere. Attempt was then made to leave via the exit located in the parking lot behind the restaurant.

As Haywood proceeded to the exit, he discovered a white Tercel blocking the driveway. He stopped behind the car. At that point, two females left the Tercel, walked around to its driver's side, conversed momentarily with the driver, and then entered Jojo's. The Tercel remained stationary but with its engine on. Becoming impatient, Haywood

honked his car horn and blinked its lights in an effort to get the Tercel to move. Rather than move, its driver (an individual named Rodriguez) "gesture[d]" at Haywood in either a "foul" manner or in a manner meaning "whatever." Haywood pulled alongside the Tercel and exchanged curse words with Rodriguez. Within seconds after the exchange began, the McFaddens saw Rodriguez raise a shotgun from the area of his lap and point it out the car window. Peewee ducked. Jermaine shouted and directed Haywood to leave. In response, Haywood pulled the car around the Tercel and exited the lot. However, Rodriguez fired as Haywood attempted to leave. The projectile he discharged (a slug) struck Jermaine's arm, leg and hand and then struck Haywood in the back.

Haywood and Jermaine realized that they had been shot. Yet, Haywood drove to a nearby street and stopped. Peewee immediately exited the car and ran back to the area from which they left to secure help from the police. Apparently, police or security personnel were located in parking lots at other establishments in the area. The police returned with Peewee and requested medical assistance for Jermaine and Haywood. Jermaine recovered after brief hospitalization. Haywood died from his gunshot wound.

The McFaddens and the estate of Haywood sued Jojo's for negligently failing to provide a secure and safe place for them. Allegedly, Jojo's had notice of other violent crime occurring in its parking lot and, therefore, had the duty to place security personnel in the lot during what they termed the "bar rush," a several hour period beginning around the time area bars closed. Furthermore, the police officer it actually had retained and assigned to monitor both the inside of the restaurant and the parking lot was insufficient,

3

in their view. Again, the complainants asserted that at least one security officer had to be stationed solely in the parking lot.

At trial, lay and expert testimony was presented, as was other evidence. Once each side had rested, the cause was submitted to the jury. The latter found both Haywood and Jojo's negligent. However, it attributed 70 percent of the negligence to Haywood and 30 percent to Jojo's. The trial court then entered judgment obligating Jojo's to pay for all of the damages suffered by the McFaddens. Jojo's alone appealed.

### Issue One - Legal and Factual Sufficiency

As previously mentioned, Jojo's questions the legal and factual sufficiency of the evidence underlying the jury's verdict. We address that question as it relates to causation and, upon addressing it, sustain the issue.

### Applicable Law

The standard of review used in determining whether evidence is legally sufficient to support a verdict is stated in *Southwest Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269 (Tex. 2002). That is, while examining the record we must view the evidence in a light that tends to support the finding of causation and disregard all evidence and inferences to the contrary. *Id.* at 274. Furthermore, no evidence supports the verdict when, among other things, the record discloses a complete absence of evidence of a vital fact or the evidence tending to prove the vital fact is no more than a scintilla. *Marathon Corp. v. Pitzner*, No. 01-0870, 2003 WL 21197255 (Tex. May 22, 2003).

Next, proximate cause consists of two elements. One is foreseeability, and the other is cause-in-fact. *Id.*; *Southwest Key Program, Inc.*, 81 S.W.3d at 274; *Doe v. Boys*

4

*Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). The latter is that which we address here. Furthermore, to establish it, the complainant must show that the misconduct was a substantial factor in bringing about the injury and without which the harm would not have occurred. *Id.* This is done by showing that "it was more probable than not that [the complainant] would not have been injured" had the purported misconduct not occurred. *See Southwest Key Program, Inc.*, 81 S.W.3d at 275 (holding that the evidence did not establish that "it was more probable than not that Gil-Perez would not have been injured had he been wearing ordinary protective gear"). For instance, if it is shown that the injury would have resulted even though the defendant did that which the plaintiff contends should have been done, then the purported negligence is not a cause-in-fact of the injury. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477-78. Nor is cause-in-fact established if the misfeasance did no more than furnish a condition which made the injury possible. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477. Finally, while one may prove causation via direct or circumstantial evidence, it cannot be based upon conjecture, guess, or speculation. *Marathon Corp. v. Pitzner*, *supra*; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 477.

### Application of Law

Here, the McFaddens contended that Jojo's caused their injury because it did not assign security personnel to exclusively monitor the parking lot during "bar rush" hours. To prove this, they offered testimony illustrating that the presence of uniformed police officers or like individuals would have had a general deterrent effect on crime occurring in the lot. Implicitly, the type of crime about which they spoke was that which involved

5

forethought or the use of reason. That this is true is readily exemplified by the testimony of their expert. In explaining the value of an officer's presence, he described how it would be "[s]omething that a criminal would view and say, . . . I think I'll not do it." In other words, the expert opined that the criminal would weigh the risk of capture in assessing whether to commit the crime. Common sense dictates that one's attempt to assess risk entails contemplation, and contemplation involves forethought about one's actions. Yet, no evidence was offered tending to illustrate that one acting suddenly and upon emotion or provocation utilizes the same thought processes as one planning to commit a crime. Rather, the very same expert admitted that an officer's presence was "not a guarantee" that an incident would not occur. So too did he acknowledge that there existed crimes that may occur despite the presence of a uniformed officer. One such crime, according to the expert, involved people fighting when they "*got angry* at each other."[1] (Emphasis added). So, while there appears to be evidence suggesting that the presence of security officers may have reduced the likelihood of crime involving forethought, that constitutes no evidence that it similarly reduces the likelihood of crime arising suddenly from provocation or emotion, and that is the type of crime that occurred at bar. *See East Tex. Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 469 (Tex. 1970) (noting that even if the person who threw a bottle and struck the victim had seen the theater personnel remove others for "rowdy" behavior "it would be just a guess as to what subjective effect such action may have had upon the bottle thrower"). Nor did anyone testify that it was more probable than not that

---

[1] The expert of Jojo's confirmed that violent crime, especially that involving emotion or passion, "happens quite often" in the presence of police officers.

6

assigning security officers to the lot would have prevented Rodriguez from shooting at Haywood in response to expletives being exchanged.[2]

And, the importance of a crime's spontaneity and stimulus in assessing causation has been underscored by other courts. For instance, in *Donnell v. Spring Sports, Inc.*, 920 S.W.2d 378 (Tex. App.--Houston [1st Dist.] 1996, writ denied), a fight broke out between those playing a softball game. Like the McFaddens at bar, Donnell sued and contended that Spring Sports should have provided security guards to deter such conduct and that the failure to do so proximately caused his injuries. In rejecting the contention, the reviewing court stated that "[w]hile the presence of security guards could deter the criminal act of a third party seeking an easy opportunity to commit a crime, we cannot conclude from this that their presence would deter fights between participants in a hotly contested athletic endeavor." *Id.* at 384-85. We agree. Though man has been termed a "rational animal" by at least one philosopher, it is beyond dispute that emotion and provocation can displace rationality and contemplation. When such characteristics are displaced, the ensuing response can be sudden and unexpected from a normally rational human being. Indeed, the McFaddens' own expert conceded that "no one, including Jojo's, knew that this was going to happen."

---

[2]To the extent that the McFaddens' expert opined that the parties may not have been angry despite the honking, flashing of lights, cursing, and shooting, he nonetheless conceded that at least one emotion came into play, that emotion being "anxiety." Furthermore, no one denied that the shooting was spontaneous and arose immediately after the honking, flashing of lights, and cursing. So, assuming that Rodriguez reacted with a cool mind yet spontaneously, there still remains a dearth of evidence permitting one to rationally infer that his conduct would have been altered in any way simply by the presence of a security officer somewhere in the parking lot and not necessarily adjacent to the locale where the exchange occurred.

Similarly, in *Yarborough v. Erway*, 705 S.W.2d 198 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.), the sudden nature of the fight also had an impact on the resulting opinion. According to the court, the time that "elapsed between the[] [combatants'] decision to go outside and the stabbing was only a matter of seconds or one to two minutes." *Id.* at 203. Furthermore, no one testified "that the [defendant's] employees could have taken any action to prevent Erway's injuries even if they had known the fight *was imminent*." *Id*. (Emphasis added). These circumstances resulted in the court holding that no evidence existed of a causal connection between the misfeasance of the nightclub owner and the injuries suffered as a result of the fight. Like the court in *Yarborough*, we too have no evidence of record indicating that even if Jojo's knew a fight was imminent and had security personnel somewhere in the parking lot at the time, the security personnel would have had time to effectively intercede and prevent the shooting.

In sum, what the McFaddens proposed is akin to that rejected by the Supreme Court in *East Texas Theatres, Inc. v. Rutledge*. There, like here, the court was faced with deducing the effect an exercise of authority would have upon the conduct of a third party. There, the injured argued that the failure of theater personnel to remove "rowdy persons" or to exercise like supervision over the situation emboldened a third party to act. In response, the court stated that "[i]t is purely speculative as to what would have happened had the defendant attempted to remove the 'rowdy persons' from the theater." *East Tex. Theatres, Inc. v. Rutledge*, 453 S.W.2d at 469. "If present at the time of removal of the persons who were 'hollering' and throwing paper cups, it would be just a guess as to what subjective effect such action may have had upon the bottle thrower." *Id.* Likewise, if Jojo's

8

had assigned security personnel to the parking lot at the time in question, it would be little more than a guess as to what subjective effect that would have had on Rodriguez when responding to Haywood's confrontation of him.[3] No evidence appears of record illustrating or permitting one to rationally infer that had security personnel been assigned to the parking lot the harm emanating from the sudden and violent exchange would not have occurred. To conclude otherwise would be to engage in speculation, an act which we cannot do. At most, Jojo's created a condition which allowed the injury to occur. That is not the same as causing the injury in fact. And, while restaurants have a "duty to exercise reasonable care for the safety of [their] patrons . . . [they] are not insurers of their patron's safety." *East Tex. Theatres, Inc. v. Rutledge*, 453 S.W.2d at 469-70.

Accordingly, we hold that no evidence of proximate cause appears of record, reverse the judgment of the trial court, and render judgment that the McFaddens take nothing against Jojo's. Having held as we do, we need not address any of the other issues asserted by Jojo's.

Brian Quinn
Justice

---

[3]This assumes that Rodriguez would have even seen the hypothetical officer in the first place. Indeed, if the presence of an officer is supposed to cause one intending to engage in misconduct to think twice, as suggested by the McFaddens' expert, then logic dictates that the prospective criminal must first perceive the officer. If he does not perceive him, then the visage of a uniform can hardly have any effect upon his mental processes. And, whether Rodriguez would have even seen the officer had one been stationed in the lot is utter speculation. Nor did anyone present evidence to morph this speculation to reasonable inference or fact.