IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-1022
════════════
 
 
Del Lago Partners, Inc. and Del Lago 
Partners, L.P., doing business under the assumed name of Del Lago Golf Resort & Conference Center, and BMC-The 
Benchmark Management Company, Petitioners,
 
v.
 
Bradley Smith, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Tenth 
District of Texas
════════════════════════════════════════════════════
 
Argued December 6, 2007
 
 
            
Justice Johnson, joined by 
Justice Hecht, dissenting.
 
 
            
Justice Hecht articulates what I believe is the correct view of a premises 
occupier’s duty to invitees.  I join his dissent.
            
I also dissent for further reasons, beginning with the 
Court’s starting from an incomplete, and thus improper, premise as to the duty 
Del Lago owed to Smith.  Citing Western 
Investments, Inc. v. Urena, 162 S.W.3d 547, 550 
(Tex. 2005), and Timberwalk Apartments, 
Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998), the Court says that 
“Smith was an invitee, and generally, a property owner owes invitees a duty to 
use ordinary care to reduce or eliminate an unreasonable risk of harm created by 
a premises condition about which the property owner knew or should have known.” 
___ S.W.3d at ___.  The Court’s statement of duty is incomplete, is not 
supported by Urena, takes the Court’s statement 
in Timberwalk out of context, and is at odds 
with the unobjected-to jury charge given in this 
case.
            
In Urena, a child living in an apartment 
complex was lured into an apartment by an adult resident of the apartments and 
sexually assaulted.  Urena, 162 S.W.3d at 549.  The resident who assaulted the child 
fled and could not be found.  Id.  The suit against the 
apartment complex was based on both ordinary negligence and premises liability 
theories.  Id. at 550.  The Court 
noted that premises liability is a special form of negligence, but the 
difference was not discussed in depth because it was not material to disposition 
of the case:
We analyze 
Urena’s negligence and premises-liability claims 
together.  To prevail on her negligence cause of action, Urena must establish the existence of a duty, a breach of 
that duty, and damages proximately caused by the breach.  Premises 
liability is a special form of negligence where the duty owed to the plaintiff 
depends upon the status of the plaintiff at the time the incident 
occurred.  . . .
 
Negligence and premises liability, therefore, involve closely 
related but distinct duty analyses.  But we need not delve into this 
distinction to resolve this case because recovery under either cause of action 
is foreclosed in the absence of evidence that Front Royale’s acts or omissions 
proximately caused L.U.’s injuries.
Id. at 
550-51 (emphasis added) (citations omitted).  The Court referenced the duty 
owed by a premises occupier to an invitee briefly in the context of proceeding 
to the causation question on which it decided the case, but the Court did not 
re-examine the duty owed by a premises occupier to an invitee.  
Id.
            
In Timberwalk, the plaintiff was assaulted in 
her apartment by an intruder.  Timberwalk, 
972 S.W.2d at 751.  The trial court submitted the 
case on a premises liability charge, and the jury found against the 
plaintiff.  Id. at 752.  The first 
issue the Court considered was whether the case was properly submitted as a 
premises liability case instead of a negligent activity case.  Id. at 753.  In determining that the case was 
properly submitted, the Court discussed in a brief manner the difference between 
the two theories of liability as to a premises occupier:
 
In Keetch v. Kroger Co., 845 S.W.2d 262 (Tex. 
1992), we explained the difference between liability for negligent activity and 
liability for failing to remedy an unreasonable risk of harm due to the 
condition of premises.  “Recovery on a negligent activity theory requires 
that the person have been injured by or as a contemporaneous result of the 
activity itself rather than by a condition created by the activity.”  
Negligence in the former context means simply doing or failing to do what a 
person of ordinary prudence in the same or similar circumstances would have not 
done or done.  Negligence in the latter context means “failure to use 
ordinary care to reduce or eliminate an unreasonable risk of harm created by a 
premises condition which the owner or occupier [of land] knows about or in the 
exercise of ordinary care should know about.”
 
Id. 
(citations omitted).  The Court determined that the case was properly 
submitted as a premises liability case, but the defendant had no duty to the 
plaintiff because the criminal assault was not foreseeable.  Id. at 758-59.  As in Urena, the Court was not undertaking to re-examine or 
re-define the duty owed by a premises occupier to an invitee.  That duty 
had been specifically considered and explicitly addressed in State v. 
Williams, 940 S.W.2d 583, 584 (Tex. 1996) (per curiam), which issued only two years before Timberwalk.  There the Court directly considered 
the proper jury instruction to be used in a premises liability case.  
Id.  The State contended that the duty imposed on it was to use 
ordinary care to either warn of an unreasonably dangerous condition or make it 
reasonably safe.  Id.  The Court held that a premises occupier 
is not liable to an invitee if the occupier either adequately warns of the 
condition or makes it reasonably safe:
 
The State 
argues that it had a duty to warn or make safe, but not both.  In other 
words, the State argues that it was not negligent unless it neither 
adequately warned Williams nor made the condition reasonably safe.  
Stated differently still, the State argues that it was not negligent unless it 
both failed to adequately warn Williams and failed to make the condition 
reasonably safe.  . . .  We agree with the State.  . . .  In 
State Department of Highways & Public Transportation v. Payne, 838 
S.W.2d 235, 237 (Tex. 1992), we held that to establish the liability of a 
premises owner, a plaintiff must prove that “the owner failed to exercise 
ordinary care to protect the [licensee or invitee] from danger.”  The owner 
can provide the required protection by either warning the plaintiff or making 
the premises reasonably safe.  This statement of the duty eliminates the 
confusion caused by PJC 66.05.
 
Id.; 
see also Harris County v. Eaton, 573 S.W.2d 177, 180 (Tex. 1978) (noting 
duty of the County as to a special defect was to “warn as in the case of the 
duty one owes to an invitee”).
            
The differences between general negligence cases and suits against premises 
occupiers based on conditions of the premises are important.  See Urena, 162 S.W.3d at 550.  
A premises occupier has specific duties of care.  When a claim against the 
occupier is based on a condition of the premises, the jury is instructed on the 
specific elements of the occupier’s duty and what must be proved before the 
plaintiff may prevail.  See Clayton W. Williams, Jr., 
Inc. v. Olivo, 952 S.W.2d 523, 529 (Tex. 
1997).[1]  In this case, Smith pleaded that 
his injury was caused by both Del Lago’s negligent 
activity and a dangerous condition on the premises.  He requested jury 
questions on both theories, but the trial court charged the jury only on the 
dangerous condition theory.  Smith does not assert that the trial court 
erred by refusing to submit a jury question on negligent activity, nor does he 
complain of the jury instructions.  Del Lago does 
not assert charge error.  Thus, the parties’ contentions and the evidence 
should be measured by the charge given.  See St. Joseph Hosp. v. 
Wolff, 94 S.W.3d 513, 530 (Tex. 2002).
            
Question 1 of the jury charge asked whose negligence, if any, proximately caused 
Smith’s injuries.  As relevant to Question 1 and the issue before us, the 
charge contained the following instructions and definitions:
 
“Proximate 
Cause” means that cause which, in a natural and continuous sequence, unbroken by 
any new and independent cause, produces an event, and without which cause 
such event would not have occurred.  In order to be a proximate cause, 
the act or omission complained of must be such that a person using ordinary care 
would have foreseen that the event, or some similar event, might reasonably 
result therefrom.  There may be more than one 
proximate cause of an event, but if an act or omission of any person not a party 
to the suit was the “sole proximate cause” of an occurrence, then no act or 
omission of any other person could have been a proximate cause.
 
With 
respect to the condition of the premises, Del Lago was negligent if-
(a) the condition posed an unreasonable risk of harm, and
(b) Del 
Lago knew or reasonably should have known of the 
danger, and
(c) Del 
Lago failed to exercise ordinary care to protect 
Bradley Smith from the danger, by both failing to adequately warn Bradley 
Smith of the condition and failing to make that condition reasonably safe.[2]
 
“Ordinary 
Care,” when used with respect to the conduct of Del Lago as an owner or occupier of a premises, means that 
degree of care that would be used by an owner or occupier of ordinary prudence 
under the same or similar circumstances. (emphasis 
added).
 
 
Under the jury 
charge, Smith’s burden was to prove Del Lago negligent 
by proving it failed in two regards:  (1) it failed to use ordinary care to 
adequately warn of the condition posing an unreasonable risk of harm and (2) it 
failed to use ordinary care to make the condition reasonably safe.  Because 
Del Lago could have been negligent only if it failed 
to act with ordinary care in regard to both, it is not liable unless that 
negligence, including both components, proximately caused Smith’s injury.
            
The Court’s statement of Del Lago’s duty and its 
analysis of the case focuses only on Del Lago’s duty to make a dangerous condition reasonably 
safe.  In doing so, the Court neglects part of Smith’s burden of 
proof:  that Del Lago failed to use ordinary care 
to adequately warn him of the condition about which he complains.
            
I would hold that under these facts, Del Lago did not 
violate a duty of ordinary care to warn Smith of a condition that he did not 
need to be warned about.  I would also hold there is no evidence that even 
if Del Lago breached a duty of care, the breach 
proximately caused Smith’s injuries.     
To review the essence of the case, Smith and his fraternity 
friends were in Del Lago’s Grandstand Bar Friday night 
until it closed at midnight, then returned on Saturday evening.  Smith 
suffered injuries at approximately 1:30 a.m. on Sunday morning while he and 
other late-staying patrons of the bar were being ushered out of the bar at 
closing time.  He complains that Del Lago failed 
to protect him from a condition he had known of for approximately an hour and a 
half, but his complaint is bottomed on the injury he suffered at the hands of an 
unknown assailant in a bar fight he was not initially involved in, yet chose to 
subject himself to.  No one could identify who started the fight, why it 
started, or who injured Smith.  Smith could not sue the unknown person who 
injured him, but he could and did sue Del Lago and 
recovered a judgment for over $1,400,000.
            
Smith complains that ongoing interaction between members of his fraternity and 
the wedding party was an unreasonably dangerous condition,[3] Del Lago knew 
of the condition or should have known of it, and Del Lago failed to provide proper security to protect patrons 
from injury in the event of a fight.  Del Lago 
essentially asserts that there was no unreasonably dangerous condition on the 
premises that it knew of or should have known of, so it did not owe a duty to 
provide more security or take other action to protect patrons such as 
Smith.  It also asserts that even if it did owe Smith a duty, the evidence 
is legally insufficient to support the findings that it breached the duty or 
that the breach proximately caused Smith’s injury.
            
I agree with the Court that occurrences on and around the Del Lago premises outside the bar before the night of the 
incident are dissimilar from and do not support a finding that Del Lago should have foreseen the general risk that patrons of 
the Grandstand Bar would be assaulted in a brawl inside the bar.  
See Timberwalk, 972 S.W.2d at 
758.  The bar was not the type of secluded or out-of-the-way area 
where a robbery, sexual assault, or other similar crime might typically, and 
possibly foreseeably, take place.  The bar was 
lighted and occupied by patrons and bar personnel up until closing time when 
Smith was injured.  Nor does the evidence establish sufficient prior 
occurrences inside or specifically related to the bar and similar to the events 
on the evening of Smith’s injury so that Del Lago had 
a general duty to provide unusual amounts of security to protect patrons from 
assaults by other patrons.  See id.  The bar was not the scene 
of frequent fights, much less fights involving multiple participants.
            
On the other hand, there is no reason to relieve Del Lago of a duty of ordinary care to its bar patrons if a 
specific, unreasonably dangerous condition developed on its premises.  
See, e.g., Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 754 (Tex. 1970); 
Restatement (Second) of Torts § 
343 cmt. b (1965) (“To the invitee the 
possessor owes . . . [the] duty to exercise reasonable affirmative care . . . at 
least to ascertain the condition of the land, and to give such warning that the 
visitor may decide intelligently whether or not to accept the invitation . . . 
.”).  Here, the jury found, under the charge as given, that an unreasonably 
dangerous condition arose.  That finding had evidentiary support in 
testimony by Smith and other persons that persons were drinking, loudly cursing, 
challenging each other, making hand gestures toward each other, and even 
occasionally physically pushing each other.  Witnesses, including a police 
officer Del Lago employed during his off-duty hours as 
a security officer, testified that such behavior in a bar setting is the way a 
lot of fights happen.[4]  The evidence is legally sufficient 
to support the jury finding that conditions in the bar developed to the point 
that an unreasonable risk of harm was posed to bar patrons.
            
As Justice Hecht explains, Smith also fully knew of and was charged with 
knowledge of the condition at a time and under conditions giving him the choice 
of remaining in the bar and encountering the condition, or avoiding the 
conditions by leaving or taking other action—such as staying away from any 
fights that broke out.  That should end the matter, but because it does 
not, the jury charge and burden of proof issues must be examined.  
Addressing those, I would hold that for two reasons, Del Lago is not liable for Smith’s damages.  First, Smith 
does not deny knowing full well about the condition he complains of.  His 
knowledge of the condition, when he knew of it, and his 
ability to either encounter or avoid the condition should be balanced against 
Del Lago’s duty to adequately warn him of the 
condition.  I would hold that under the circumstances, Del Lago was not negligent because it did not breach a duty of 
ordinary care to warn Smith as a matter of law.  Next, even assuming 
Del Lago was negligent, there is no evidence its 
negligence was a proximate cause of Smith’s injury.
            
In Parker v. Highland Park, Inc., 565 S.W.2d 512, 521 (Tex. 1978), this 
Court held that an invitee’s knowledge of a dangerous condition does not relieve 
the premises occupier of its duty to the invitee.[5]  In those situations in which the 
invitee’s knowledge does not relieve the premises occupier of its duty, however, 
the invitee still must prove that the premises occupier failed to exercise 
ordinary care by failing to both adequately warn the invitee of the condition 
and take action to make the condition reasonably safe.  In Williams, 
the Court specifically approved the format of the jury question and instructions 
given in this case.  Williams, 940 S.W.2d at 
584-85.
            
The Court says that there are some conditions for which no warning could 
possibly be adequate.  Assuming that is so, for the sake of argument, it 
cannot be the case here because several of Smith’s witnesses testified that the 
possibility of a fight was evident for a long period of time and one of Smith’s 
witnesses, a fellow fraternity brother, testified that he did not enter the 
fight when it started because he did not want to go to work with a black 
eye.  Clearly the “condition” was one for which an adequate warning could 
have been given if one were needed.  By diminishing the importance of the 
duty to warn that invitees must prove premises occupiers breached in order to 
prove liability, the Court moves premises liability law close to that of simple 
ordinary negligence.
            
In its third issue, Del Lago argues that there is no 
evidence it breached its duty to Smith.  Smith argues that there is 
evidence Del Lago knew of an escalating situation but 
took no action to defuse it or call security to protect bar patrons.  Del 
Lago focuses on the credibility of the 
witnesses.  It urges that Smith and his witnesses were not believable as to 
what took place during the evening while the believable evidence—that to which 
Del Lago’s witnesses testified—is conclusive on the 
question of whether security was sufficient for the conditions.  I disagree 
with Del Lago as to its credibility assertion.  
The record supports the jury’s determination that at least some of Smith’s 
testimony was credible.  Nevertheless, I would hold that Del Lago did not breach its duty to Smith and was not 
negligent.
            
The purpose of requiring premises occupiers to warn invitees of unreasonably 
dangerous conditions is to provide the invitee with a choice at a time and place 
where the invitee can decide (1) whether to come onto or remain on the premises, 
accept the risk of harm posed by the condition, and take action to avoid or 
protect himself from the risk or (2) refuse to accept the risk by either not 
coming onto the premises or by leaving.  See Restatement (Second) of Torts § 343 
cmt. b (1965) (stating that 
the possessor owes the duty “to give such warning that the [invitee] may decide 
intelligently whether or not to accept the invitation, or may protect himself 
against the danger if he does accept it”); see also Bill’s Dollar Store, Inc. 
v. Bean, 77 S.W.3d 367, 370 (Tex. App.—Houston [14th Dist.] 2002, pet. 
denied).  As to Smith, a warning by Del Lago 
would have been similar to a passenger telling a driver who was consciously 
exceeding the speed limit that exceeding the speed limit could result in a 
ticket for speeding.  Such a statement is not a warning, it is a superfluous reminder of what the driver 
already knows.
            
At some point, the ordinary care standard must mean something.  I would 
hold that it means something here.  The question is, would reasonable 
persons exercising ordinary care in Del Lago’s 
position have gone around the room telling Smith and other adult members of the 
groups who were in the bar after midnight and into the wee hours of the morning 
about what was occurring and that there was potential for a fight?  I think 
not.  See Restatement 
(Third) of Torts: Liab. for Physical Harm § 7 cmt. I (Proposed Final Draft No. 1, 
2005) (“Sometimes reasonable minds cannot differ about whether an actor 
exercised reasonable care . . . .  In such cases, courts take the question 
of negligence away from the jury and determine that the party was or was not 
negligent as a matter of law.  Courts sometimes inaptly express this result 
in terms of duty. . . .  [T]hese cases merely 
reflect the one-sidedness of the facts bearing on negligence . . . .”).  
Such actions would not have added to Smith’s knowledge, and to require them 
imposes a requirement of meaningless ritual.  And more to the point, should 
tort liability attach because Del Lago’s personnel did 
not do so?  Smith’s knowledge under these facts gave him the same knowledge 
and opportunity to avoid potential harm from the condition as if he did not know 
of the escalating conditions in the first place and Del Lago had given him an adequate warning of the conditions and 
the ultimate fight.  His knowledge, considering when he obtained it and the 
adequacy of the choices that were available to him, must be weighed when 
determining whether Del Lago failed to act with 
ordinary care to warn him.  The greater Smith’s knowledge of the condition, 
the less an ordinary person would believe Smith needed warning.  Once his 
knowledge reached the level of what an adequate warning would have conveyed, as 
it did that evening and early morning, Del Lago’s duty 
of ordinary care to warn should be deemed fulfilled as a matter of law.  I 
would hold, as a matter of law, that under these facts Del Lago did not breach its duty of ordinary care to warn 
Smith.
            
The purpose of the law is not to make the premises occupier an insurer of its 
invitee’s safety and thus insulate an invitee from all risk of injury, but 
rather to afford the invitee sufficient knowledge and reasonably available 
choices to make an informed decision about whether to encounter or avoid a 
condition.  It is contrary to both common sense and logic to impose 
liability on Del Lago because its employees did not 
warn Smith during the evening that “members of Sigma Chi and a wedding party are 
drinking, acting belligerently toward and threatening each other,” or take 
similar action when, according to Smith’s own testimony, he knew as much as the 
warning would have conveyed.  Parties should be held liable in tort because 
they did or failed to do something substantive that caused injury to another, 
not because they performed or failed to perform meaningless acts.  If it is 
otherwise, premises occupiers can be held liable for failing to perform a 
meaningless act, as is being done to Del Lago 
here.
            
Further, even assuming Del Lago was negligent, I would 
hold that there is no evidence its negligence was a proximate cause of Smith’s 
injury.  One reason is there is no evidence the absence of the warning was 
a cause-in-fact of the injury.  A second reason is there is no evidence 
that even if security had been present earlier and at the time of the fight, or 
if Del Lago personnel had taken actions such as 
escorting rowdy patrons out of the bar, the person or persons who started the 
fight and the person who injured Smith would not have been present at the time 
of the fight.
            
As to the first reason, proof of cause-in-fact (“but-for” causation) requires 
evidence that the negligent act or omission was a substantial factor in bringing 
about the injury and that absent the act or omission, the harm would not have 
occurred.  See Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 
472, 477 (Tex. 1995).  Thus, Smith was required to prove that the absence 
of a warning by Del Lago was a substantial cause of 
his injury and that his injury would not have occurred but for the absence of 
the warning.  See id.  Including both the warning and “making 
safe” elements in one instruction did not lessen Smith’s burden to prove that 
both elements proximately caused his injury.  See Williams, 940 
S.W.2d at 584 (“The State argues that it had a duty to warn or make safe, but 
not both. . . . We agree . . . .”).
            
Under some circumstances, when a defendant has the duty to give a warning, the 
plaintiff is aided by a rebuttable presumption that a warning would have been 
heeded if it had been given.  See, e.g., Gen. Motors Corp. v. 
Saenz, 873 S.W.2d 353, 357-59 (Tex. 1993); Tex. Dep’t of Transp. v. 
Fontenot, 151 S.W.3d 753, 765 (Tex. App.—Beaumont 2004, pet. denied); see 
also Barron v. Tex. Dep’t of Transp., 880 S.W.2d 300, 304 (Tex. App.—Waco 
1994, writ denied).  But even when such a presumption applies, it is 
rebutted by evidence from which an inference can be drawn that the plaintiff 
would not have reacted differently if a warning had been given.  See 
Saenz, 873 S.W.2d at 358-59.  For example, the 
presumption is rebutted by evidence suggesting that the plaintiff knew the 
information a warning would have provided but nevertheless knowingly and 
voluntarily chose to face the risk.  See Guzman v. Synthes (USA), 20 S.W.3d 717, 720-21 (Tex. App.—San 
Antonio 1999, pet. denied); see also Stewart v. Transit Mix Concrete & 
Materials Co., 988 S.W.2d 252, 256-57 (Tex. App.—Texarkana 1998, pet. 
denied).  Once the presumption is rebutted, it ceases to play any part in 
determining causation.  See Saenz, 873 S.W.2d at 
359.
            
As noted above, and also by the Court and Justice Hecht, Smith knew all the 
information an adequate warning by Del Lago would have 
conveyed.  He testified that he was aware of the tension between the 
groups, he witnessed episodes he described as “severe escalation,” and at least 
an hour before the fight he saw men yelling, “squaring 
up chest to chest, kind of in a standoff,” and “taunting back and forth.”  
He also testified that when the fight finally broke out, he knew of the fight 
because he saw it even though he was not part of it.  As Smith put it in 
his brief to this Court:
 
Smith was 
not fighting and was standing against the wall until he saw his friend Spencer 
Forsythe go down.  Forsythe was thrown against a 
wall and shoved to the floor.  He was being kicked in the head, legs, and 
stomach when Smith leaned over and grabbed him by the shirt to pull him up and 
move him out of the bar.
 
            
There is no question about what Smith would have done if he had the knowledge a 
warning would have conveyed about the condition:  he had the knowledge, yet 
he stayed in the bar with his friends until closing time and then moved from a 
place of safety into the fight after he knew it was occurring.  Smith did 
not testify that a warning by Del Lago was necessary 
for him to know what was happening or that a warning would have affected his 
conduct or prevented his injury, and there is no other evidence that if he had 
been warned by Del Lago employees about the ongoing 
aggressive behavior and confrontations during the evening, the alleged lack of 
sufficient security, or even the fight itself, the warning would have made a 
difference to him.  In short, there is no proof that but for Del Lago’s failure to warn Smith of the condition, or even the 
fight itself, his injury would not have occurred.  See Restatement (Third) of Torts: Liab. for Physical Harm (Basic Principles) § 18 cmt. c 
(Tentative Draft No. 1, 2001) (“To justify liability in a negligent 
failure-to-warn case, there must be a finding of causation—a finding that the 
warning, if given, would have prevented the harm that resulted . . . .”).
            
Next, there is no evidence that the presence of security or the removing of 
rowdy persons from the bar would have prevented Smith’s injury; in other words, 
that they were a cause-in-fact of his injury.  In regard to the causation 
analysis, the facts in this case are similar to those in East Texas Theatres, 
Inc. v. Rutledge, 453 S.W.2d 466 (Tex. 1970).  There the Court 
considered whether a theatre owner’s failure to provide security proximately 
caused injury to a patron.  The plaintiff was on the ground floor of the 
theatre when she was hit in the head by a bottle thrown from the balcony.  
Id. at 467.  The plaintiff claimed, and the 
jury found, that persons in the balcony were acting in a rowdy manner during the 
movie, the theatre and its employees negligently failed to remove the rowdy 
persons, and the theatre’s negligence proximately caused the plaintiff’s 
injuries.  Id.  During the movie, there was “hollering” from 
patrons in the almost-full balcony and on the ground floor and paper and cups 
were falling or being thrown from the balcony.  Id. at 467-68.  After the movie ended, the 
plaintiff was leaving the theatre when she was hit in the head by a bottle 
thrown from the balcony.  Id. at 467.  
No particular person in the balcony was identified during trial as having been 
rowdy, nor was the person who threw the bottle identified.  Id. at 468.  The Court assumed, without deciding, 
that the finding of negligence was supported by evidence, but held there was no 
evidence the negligence proximately caused the plaintiff’s injuries.  Id. at 468-69.  The Court rejected two 
contentions of the plaintiff that are substantively the same as those made by 
Smith in this case: rowdy patrons could and should have been removed and the 
balcony should have been supervised more closely.  Id. at 469.  As to the first contention, the 
Court held there was no evidence the bottle-thrower was one of the rowdy 
persons, so even if the rowdies had been removed, there was no evidence the 
bottle-thrower would have been removed.  Id.  As to the second 
contention, the Court held that it was speculative to say supervision would have 
prevented the bottle-thrower from injuring the plaintiff because no one knew who 
did the throwing.  Id.
            
In reaching its conclusion that Del Lago’s failure to 
provide adequate security was a proximate cause of Smith’s injuries, the 
majority relies on lay and expert testimony that a security presence in the bar 
during the ninety minutes that the two groups were confronting each other would 
have defused the situation and prevented the brawl at closing time.  
However, no one knew who or what started the fight as the patrons were leaving 
the bar.  The testimony was that there was a press of bodies going out the 
door when all of a sudden “all heck broke loose.”  There was no evidence 
that only fraternity members and wedding guests were exiting the bar or that a 
member of one of the groups started the melee.  There was no evidence about 
why the fight started, that is, for example, whether one of the fraternity or 
wedding group members started it because of earlier friction, or whether someone 
unrelated to either group took offense at a remark or insensitive touch or rub 
and threw a punch, or whether someone tripped and fell into another person who 
pushed back, thus starting a chain reaction of pushing and fighting.  Nor 
was there testimony that a member of either the fraternity or wedding groups was 
the person who injured Smith or that the person who injured Smith was 
intoxicated or involved in the earlier jousting between the groups.  Just 
as in East Texas Theatres, there is no evidence that if security had 
escorted rowdy patrons out of the bar earlier, the person or persons who started 
the fight would not have been present at closing time, the cause of the fight 
would have been eliminated, or the person who injured Smith by holding him in a 
headlock and hitting his head against the wall would not have been in the 
fight.  Id. (stating that, unless the identity of 
the bottle-thrower was known, it was impossible to determine the effectiveness 
of the suggested control measures).
            
I would reverse the judgment of the court of appeals and render judgment that 
Smith take nothing.
 
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
OPINION DELIVERED:  
April 2, 2010







[1] 
Premises occupiers may be liable for injuries to 
invitees when the injuries are caused by (1) negligent activities of the 
occupier or (2) unreasonably dangerous conditions on the premises.  
See Timberwalk, 972 
S.W.2d at 753.

[2] 
See Williams, 940 S.W.2d at 584; see also Comm. on Pattern 
Jury Charges, State Bar of Tex., Texas Pattern Jury Charges:  
Malpractice, Premises & Products PJC 66.4 (2006).

[3] 
Justice Wainwright argues persuasively that the 
activities in the bar were not conditions of the premises insofar as duties owed 
by Del Lago to invitees.  Although I do not 
necessarily disagree with his analysis, the parties address the activities as 
being a premises condition, and the Court addresses them as such; thus I will do 
so.

[4] 
Smith also urges that the lack of sufficient 
security was part of the condition.  But the alleged insufficient security 
was not part of the condition posing a risk of harm; it was a component of Del 
Lago’s action in meeting the duty Del Lago had to its invitees.  Smith’s argument that 
insufficient security was part of a premises condition conflates the condition 
alleged—the ongoing aggressive behavior of bar patrons—with the question of 
whether Del Lago exercised ordinary care to protect 
him from the condition.

[5] 
The rule in most states is to the contrary:  
the premises occupier has no duty to warn of open and obvious conditions when 
the danger can be fully appreciated and averted by a reasonable person.  
See TXI Operations, L.P. v. Perry, 278 S.W.3d 763, 771-72 n.18 (Tex. 
2009) (Hecht, J., dissenting) (listing jurisdictions holding that a landowner 
has no duty to warn of a condition of which the invitee is aware, or should be 
aware of).  The rationale underlying this doctrine is that “‘the open and 
obvious nature of the hazard itself serves as a warning.  Thus, the owner 
or occupier may reasonably expect that persons entering the premises will 
discover those dangers and take appropriate measures to protect themselves.’” 
 See Armstrong v. Best Buy Co., 788 N.E.2d 1088, 1089 (Ohio 2003) 
(quoting Simmers v. Bentley Constr. Co., 597 N.E.2d 504, 506 (Ohio 
1992)).  This is also the rule of the Restatement (Second) of Torts, and in 
many other contexts, is the law in Texas.  Restatement (Second) of Torts § 343 
(1965); see, e.g., Gen. Elec. Co. v. Moritz, 257 S.W.3d 211, 218 
(Tex. 2008) (premises owner owes no duty to warn an independent contractor’s 
employees of an open and obvious danger); Stephen F. Austin State Univ. v. 
Flynn, 228 S.W.3d 653, 660 (Tex. 2007) (explaining that the recreational use 
statute does not obligate a landowner to warn of known conditions); Jack in 
the Box, Inc. v. Skiles, 221 S.W.3d 566, 568 (Tex. 
2007) (per curiam) (noting that an employer owes no 
duty to warn of hazards that are commonly known or already appreciated by the 
employee); Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 184 
(Tex. 2004) (holding that product seller owes no duty to warn of commonly known 
risks of the product’s use); Joseph E. Seagram & Sons, Inc. v. 
McGuire, 814 S.W.2d 385, 387-88 (Tex. 1991) (holding there is no duty to 
warn of risks associated with prolonged and excessive alcohol consumption 
because such risks are common knowledge).
                
Jurisdictions retaining the open-and-obvious risk doctrine have also logically 
concluded that a landowner has no duty to an invitee to warn or make safe known 
and obvious conditions when the invitee has assisted in creating the conditions; 
under such circumstances, a landowner should anticipate the invitee will avoid 
harm from the known condition and warning is unnecessary.  See, e.g., 
Baber v. Dill, 531 N.W.2d 493, 496 (Minn. 1995) (“To hold a landowner has a 
duty to warn an invitee of danger created, in part, by that individual is 
untenable.”).